UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

)
THE JUDGE ROTENBERG )
EDUCATIONAL CENTER, INC., )
250 Turnpike Street )
Canton, MA 02021 )
)
     *Plaintiff*, )
)
     v. )     Civil Action No.
)
U.S. FOOD AND DRUG ADMINISTRATION, )
10903 New Hampshire Avenue )
Silver Spring, MD 20993 )
)
and )
)
U.S. DEPARTMENT OF HEALTH AND )
HUMAN SERVICES, )
200 Independence Avenue, S.W. )
Washington, D.C. 20201 )
)
     *Defendants*. )

———————————————————————

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This action is brought pursuant to the Freedom of Information Act (the "FOIA" or

the "Act"), 5 U.S.C. § 552, to compel the production of agency records improperly withheld

from Plaintiff, The Judge Rotenberg Educational Center, Inc. ("Plaintiff" or "JRC"), by

Defendants, the U.S. Food and Drug Administration ("FDA" or the "Agency") and the U.S.

Department of Health and Human Services ("HHS" or the "Department") (collectively,

"Defendants"), concerning Defendants' ongoing attempts to interfere with JRC's state-regulated

practice of medicine, including their efforts to prohibit JRC's use of the Graduated Electronic

Decelerator ("GED") device, an aversive conditioning device ("ACD"), the original version of

which FDA cleared, to treat the self-injurious and aggressive behaviors of some of its patients

when approved by a Massachusetts Probate Court judge (the "Probate Court").

### JURISDICTION AND VENUE

2.     This Court has both personal jurisdiction over the parties and subject-matter

jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

3.     Venue is proper in the U.S. District Court for the District of Columbia (the

"District Court") pursuant to 5 U.S.C. § 552(a)(4)(B).

### PARTIES

4.     Plaintiff JRC is a non-profit corporation with a principal place of business at 250

Turnpike Street, Canton, Massachusetts. JRC provides care and treatment, including GED

treatment – when approved by a Probate Court upon an individualized determination that GED

treatment is the most effective, least restrictive treatment for the particular patient – to a subset of

its patients who engage in the most dangerous and treatment-resistant self-injurious and

aggressive behaviors. JRC submitted the two FOIA requests that are at issue in this action.

5.     Defendant FDA is a federal regulatory agency that is within Defendant HHS and

is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). FDA has possession, custody, and

control of certain non-exempt records that JRC seeks through one of the FOIA requests at issue

in this action.

6.     Defendant HHS is a federal executive department that includes Defendant FDA

and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). HHS has possession, custody,

and control of certain non-exempt records that JRC seeks through the other FOIA request at

issue in this action.

## FOIA LEGAL STANDARD

7.      FOIA requires that "each agency, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

8.      FOIA provides:

Each agency, upon any request for records . . . shall . . . determine within 20 [working] days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor; . . . the right of such person to seek assistance from the FOIA Public Liaison of the agency; and . . . in the case of an adverse determination . . . the right of such person to appeal to the head of the agency . . . ; and . . . the right of such person to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services [("OGIS")].

5 U.S.C. § 552(a)(6)(A)(i). Under FOIA, to make the "determination" required by the Act:

[T]he agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse.

*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*").

9.      FOIA commands the agency to "promptly" produce the records to the requester upon making a determination to comply with the request, 5 U.S.C. § 552(a)(6)(C)(i), "which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years," *CREW*, 711 F.3d at 188 (quoting 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i)).

## COUNT I: FOIA VIOLATION

10.     JRC repeats and re-alleges the allegations in Paragraphs 1 through 9 as if each were separately and specifically set forth herein.

-3-

**FDA's Proposed Ban and JRC's First FOIA Request and First FOIA Action**

11.     On April 25, 2016, FDA published a proposed rule that would ban electrical stimulation devices ("ESDs"), which FDA defined as a type of ACDs, used to treat self-injurious and aggressive behavior (the "Proposed Ban"). 81 Fed. Reg. 24386 (Apr. 25, 2016). By FDA's own admission, the Proposed Ban targeted only one treatment provider – JRC – and only one ESD – the GED. 81 Fed. Reg. at 24390.

12.     Much of the information on which FDA's Proposed Ban relied was specific to JRC and the GED and was publicly unavailable, having been privately solicited from or submitted by non-JRC sources. Because FDA proceeded by a rulemaking rather than an adjudicatory process, there was no mechanism – other than FOIA – for JRC to examine the reliability of the factual allegations on which the Proposed Ban relied. Thus, on December 27, 2016, JRC, through counsel, submitted to FDA a request for information and records concerning, *inter alia*, the Proposed Ban (the "First FOIA Request").

13.     JRC-affiliated parties submitted to FDA related FOIA requests, at least one of which FDA referred to HHS for a response.

14.     JRC and the JRC-affiliated parties subsequently filed, on October 10, 2017, a FOIA lawsuit in the District Court to compel FDA and HHS to produce records responsive to JRC's First FOIA Request and the JRC-affiliated parties' related FOIA requests (the "First FOIA Action"). *See generally JRC, et al. v. FDA, et al.*, No. 1:17-cv-02092-BAH (D.D.C.).

15.     On February 2, 2018, the District Court ordered FDA and HHS to produce FOIA records in the First FOIA Action, *see* Min. Order, *JRC, et al. v. FDA, et al.*, No. 1:17-cv-02092-BAH (D.D.C. Feb. 2, 2018), which records show that HHS, among others, pressured FDA to

issue the Proposed Ban, overcoming FDA's concerns about the lack of supporting medical and scientific evidence.

### FDA's Ban

16.     On March 6, 2020, FDA published a final rule purporting to ban ESDs used to treat self-injurious and aggressive behavior, including JRC's GED (the "Ban"). 85 Fed. Reg. 13312 (Mar. 6, 2020).

17.     The District Court's order in the First FOIA Action requiring FDA and HHS to produce records resulted in the release of information showing that HHS, after meeting with groups opposed to JRC's use of the GED, ignored FDA's continuing concerns about the lack of medical and scientific evidence supporting the Ban and ordered FDA to issue the Ban before the Agency had even reviewed JRC's public comment on the Proposed Ban.

18.     FDA purported to establish April 6, 2020 as the effective date of the Ban. FDA further purported to establish two "compliance" dates for the Ban: September 2, 2020 "[f]or devices in use on specific individuals as of the date of publication [of the Ban] and subject to a physician-directed transition plan," and April 6, 2020 "[f]or all other devices." 85 Fed. Reg. at 13312, 13349.

### JRC Obtains a Partial Administrative Stay of the Ban and Successfully Challenges the Ban

19.     In March of 2020, JRC petitioned FDA for an administrative stay of the Ban. Shortly thereafter, FDA notified JRC that the Agency was granting a partial administrative stay of the Ban as to ESDs currently in use on specific individuals who had or would need to obtain a physician-directed transition plan to cease use of such devices. 85 Fed. Reg. 50950 (Aug. 19, 2020). FDA also informed JRC that, during the stay, it would not initiate an enforcement action

against JRC nor initiate or support a referral for any enforcement action against JRC with respect to patients currently being treated with ESDs for self-injurious and aggressive behavior.

20.     FDA later notified JRC that its stay of the Ban extended to patients who, at the time that FDA issued the stay, were court-authorized to receive treatment with GED devices but were being faded from the devices or were not actually wearing the devices.

21.     In March of 2020, JRC and the parents and guardians of fifty-eight JRC patients who had received, were seeking, or intended to seek Probate Court approval for GED treatment (the "Patients") also petitioned for review of FDA's Ban (the "Appeal") in the U.S. Court of Appeals for the D.C. Circuit (the "D.C. Circuit").

22.     On July 6, 2021, after briefing and argument, the D.C. Circuit vacated FDA's Ban. The D.C. Circuit held that FDA's rulemaking was *ultra vires*, and that FDA had improperly interfered with the practice of medicine by attempting to ban a particular use of an otherwise legal medical device. Because FDA's lack of authority was dispositive, the D.C. Circuit expressly declined to review whether the medical and scientific evidence supported FDA's allegations concerning ESDs used to treat self-injurious and aggressive behavior, and thus did not endorse FDA's claims. *See JRC v. FDA*, 3 F.4th 390 (D.C. Cir. 2021). Copies of the D.C. Circuit's opinion and judgment are incorporated herein and attached hereto as **Exhibit A**.

23.     FDA then petitioned for rehearing en banc. On November 22, 2021, the D.C. Circuit denied FDA's petition, with not a single judge having requested a vote thereon. *See* Order, *JRC v. FDA*, No. 20-1087 (D.C. Cir. Nov. 22, 2021). A copy of the D.C. Circuit's order is incorporated herein and attached hereto as **Exhibit B**.

24.     The D.C. Circuit's judgment vacating FDA's Ban became final on February 22, 2022, when FDA chose not to petition for a writ of certiorari to the U.S. Supreme Court (the "Supreme Court").

25.     FDA's partial administrative stay remained in place through the date the D.C. Circuit's judgment became final. Thus, the Ban never went into effect for those JRC patients who were actually receiving GED treatment or who had a court-authorized treatment plan for GED treatment.

26.     After the D.C. Circuit's judgment became final, FDA notified JRC that the Agency was dismissing as moot the petition for stay filed by JRC because the Ban had been vacated and was without legal effect.

**JRC's Second FOIA Request and Second FOIA Action**

27.     On March 29, 2022, JRC submitted another FOIA request to FDA, seeking to understand FDA's interpretation of the D.C. Circuit's decision and whether (and, if so, how) FDA intended to continue interfering with JRC's practice of medicine (the "Second FOIA Request").

28.     In May of 2022, JRC independently learned that the U.S. Congress ("Congress") was considering proposed legislation concerning ESDs used to treat self-injurious and aggressive behavior. JRC then discovered, upon investigation, that FDA had been lobbying Congress to undo the D.C. Circuit's judgment by legislatively banning ESDs used to treat self-injurious and aggressive behavior and by expressly granting FDA the statutory authority to ban a specific use of a legal medical device.

29.     Nearly six months passed without FDA producing any new records in response to the Second FOIA Request in violation of FOIA. Because there was no mechanism – other than

FOIA – for JRC to examine FDA's discussions with Congress about the D.C. Circuit's judgment, its banning authority, and the safety and efficacy of JRC's GED device, JRC was forced, on November 28, 2022, to file another FOIA lawsuit in the District Court to compel FDA to produce records responsive to JRC's Second FOIA Request (the "Second FOIA Action"). *See generally JRC, et al. v. FDA*, No. 1:22-cv-03583-BAH (D.D.C.).

30.     FOIA records that FDA produced in the Second FOIA Action under the District Court's supervision show that FDA pushed for Congress to undo the D.C. Circuit's judgment, requested that Congress legislatively ban ESDs used to treat self-injurious and aggressive behavior in order to avoid having to defend the rule in anticipated litigation, and refused to evaluate new evidence that further undermined the alleged bases for the Agency's vacated Ban.

### FDA's Efforts to Have Congress Undo the D.C. Circuit's Judgment

31.     In October of 2021, before the D.C. Circuit denied FDA's petition for rehearing en banc, a handful of U.S. Senators ("Senators"), having been lobbied by groups opposed to JRC's use of the GED, wrote a letter urging FDA to continue its litigation defense of the Ban in the then-ongoing Appeal.

32.     FOIA records produced in the Second FOIA Action under the District Court's supervision show that, shortly after the D.C. Circuit's denial of the petition for rehearing en banc in November of 2021, FDA decided that, rather than attempting to defend the Ban in the Supreme Court, the Agency instead would lobby Congress to undo the D.C. Circuit's judgment. FDA's outreach to Congress began no later than January of 2022.

33.     FDA encouraged friendly Senators and members of the U.S. House of Representatives ("Representatives") to take advantage of the opportunity provided by the upcoming must-pass funding legislation for the Agency, known as the user fee reauthorization

("UFA"), to address this issue. FDA provided friendly Senators and Representatives with its preferred draft legislative language, which not only would have granted FDA the authority to ban a particular use of a legal device, but also would have legislatively banned ESDs used to treat self-injurious and aggressive behavior and included a legislative finding, based on the untested claims FDA had made in the Ban, that ESDs used to treat self-injurious and aggressive behavior present an unreasonable and substantial risk of illness or injury.

34.     FDA later acknowledged that it favored a legislative ban of ESDs used to treat self-injurious and aggressive behavior because the Agency wanted to avoid having to conduct another rulemaking as required by the Administrative Procedure Act, 5 U.S.C. §§ 551-559, and then having to defend that rulemaking and to prove "good cause" for that rulemaking in another anticipated court challenge by the Patients and JRC.

35.     FDA admitted that its proposed draft legislation – like the Agency's vacated Ban – was intended to target only JRC's GED. FDA repeatedly described its proposed draft legislation as "the JRC fix" and explained the Agency had been careful to use a narrow device definition that would not impact the other electrical stimulation devices that the Agency had cleared to treat other behaviors. FDA also attempted to justify its proposed draft legislation by repeatedly reminding Congress that groups opposed to JRC's use of the GED supported banning ESDs used to treat self-injurious and aggressive behavior.

36.     The Senator who sponsored FDA's draft bill similarly explained to his colleagues that he had worked closely with the Agency to limit the effect of the legislative language to JRC's GED device only. He also admitted that, even though it was "probably true" that contingent skin shock with JRC's GED is effective when used to treat self-injurious and aggressive behavior, his goal was to "stand with" groups opposed to JRC's use of the GED and

"put[] an end to this . . . *device*" because, in his opinion, "it's just not an acceptable *practice*."

*Senate HELP Marks FDASLA Act, MOBILE Health Care Act, RISE & SHINE Act,*

*Cardiovascular Research, Early Hearing Detection, Other Bills: Before the S. Comm. on Health,*

*Educ., Labor, & Pensions*, 117th Cong. (2021-2022) (statement of Sen. Chris Murphy)

(emphasis added).

37.     When challenged by other Senators and Representatives, FDA steadfastly refused

to reconsider its goal of banning ESDs used to treat self-injurious and aggressive behavior. For

example, when a Senator asked whether FDA had considered a peer-reviewed article published

in a scientific journal after the Agency published the Ban showing that, within a cohort of 173

patients, JRC's GED device reduced the frequency of self-injurious and aggressive behaviors by

97%, a member of FDA's leadership responded that there was "not much we [*i.e.*, the Agency]

can do now . . ." *But see* 21 U.S.C. § 360f(a) (requiring a medical device ban to be based on "*all*

available data and information") (emphasis added). As another example, when a Representative

described how she had heard from families who were very concerned about how a ban of ESDs

used to treat self-injurious and aggressive behavior would affect the GED treatment their

relatives were receiving at JRC as a last resort, an Agency staffer stated simply that "the train has

left the station" for them.

38.     FDA's advocacy was initially unsuccessful. Congress refused to include in the

UFA any provision concerning either FDA's authority to ban a particular use of a legal device or

ESDs used to treat self-injurious and aggressive behavior, which became law on September 30,

2022. *See generally* FDA User Fee Reauthorization Act of 2022, Pub. L. No. 117-180, §§ 1001-

5008, 136 Stat. 2114, 2139 (2022).

39. This setback did not deter FDA, which perceived another opportunity to address these issues in the must-pass 2022 year-end funding bill, known as the omnibus appropriations bill ("Omnibus").

40. Ultimately, the supportive Senator was able to insert a single section authorizing FDA to ban a use of a device into the 4,155-page Omnibus, which became law on December 29, 2022. However, the Omnibus did *not* include a legislative ban of ESDs used to treat self-injurious and aggressive behavior or any legislative finding about ESDs used to treat self-injurious and aggressive behavior. *See generally* Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, § 3306, 136 Stat. 4459, 5834 (2022).

41. Shortly thereafter, the Senator expressed his gratitude for the Agency's help in drafting the legislation, indicated that he was eager for FDA to ban ESDs used to treat self-injurious and aggressive behavior, and asked when the Agency expected to re-issue a rule. FDA responded by repeatedly expressing its gratitude for the Senator's legislative efforts to ban ESDs used to treat self-injurious and aggressive behaviors.

**JRC's Instant FOIA Requests**

42. Because JRC submitted the Second FOIA Request before it discovered FDA's lobbying efforts, and because JRC had learned that FDA's lobbying efforts were continuing after JRC's submission of the Second FOIA Request, on November 21, 2022, JRC submitted a written FOIA request to FDA via the Agency's online portal (the "FDA FOIA Request"). The FDA FOIA Request is incorporated herein and attached hereto as **Exhibit C**. FDA docketed the FDA FOIA Request as number 2022-8287.

43. Because HHS had mandated that FDA issue the vacated Ban in response to pressure by groups opposed to JRC's use of the GED, among others, as shown by the FOIA

records the District Court ordered Defendants to produce in the First FOIA Action, JRC also submitted a written FOIA request to HHS via the Department's online portal on November 21, 2022 (the "HHS FOIA Request") (collectively, with the FDA FOIA Request, the "Instant FOIA Requests"). The HHS FOIA Request is incorporated herein and attached hereto as **Exhibit D**. HHS docketed the HHS FOIA Request as number 2023-00157-FOIA-OS.

44.     The Instant FOIA Requests seek records sent, obtained, received, created, generated, drafted, or dated on or after March 29, 2022 (the date JRC submitted the Second FOIA Request). Ex. C at 1; Ex. D at 1. The Instant FOIA Requests seek similar categories of records from each Defendant. In the Instant FOIA Requests, JRC provided Defendants with precise guidance about the narrow categories of particular records it sought, which include Defendants' communications with each other, Congress, the U.S. Department of Justice, the Massachusetts Attorney General's Office, and the Massachusetts Department of Developmental Services concerning JRC, aversive therapy, ACDs, ESDs, or the GED device. Ex. C at 1; Ex. D at 1.

45.     In the Instant FOIA Requests, Plaintiffs requested that Defendants comply with the statutory and regulatory requirements governing their response deadlines and that they produce records on a rolling basis. Ex. C at 2; Ex. D at 2.

46.     On November 21, 2022, the same date that JRC submitted the Instant FOIA Requests, FDA confirmed the Agency's receipt of the FDA FOIA Request, *see* the FDA confirmation incorporated herein and attached hereto as **Exhibit E**, and HHS acknowledged the Department's receipt of the HHS FOIA Request, *see* the HHS acknowledgment incorporated herein and attached hereto as **Exhibit F**.

47.     Defendants have non-exempt records responsive to the Instant FOIA Requests that Defendants have not previously made publicly available or produced to JRC and that Defendants should have promptly produced to JRC pursuant to FOIA.

48.     In violation of FOIA, Defendants failed to provide JRC with their determinations as to the Instant FOIA Requests within twenty working days of their receipt of the Instant FOIA Requests by failing, *inter alia*, to: gather and review the requested documents; determine and communicate the scope of the documents they intended to produce and withhold, and the alleged reasons for withholding any documents; inform JRC that it could appeal any adverse portion of their determinations; advise JRC of its right to seek assistance from their FOIA Public Liaisons; and/or communicate to JRC its right to seek dispute resolution services from their FOIA Public Liaisons or the OGIS. *See CREW*, 711 F.3d at 188; 5 U.S.C. § 552(a)(6)(A)(i).

49.     In violation of FOIA, Defendants also failed to promptly produce to JRC all of the non-exempt records responsive to the Instant FOIA Requests. *See CREW*, 711 F.3d at 188.

50.     It has been more than a year (and 282 working days) since JRC submitted the Instant FOIA Requests. During that time, Defendants have not notified JRC of their determinations, and Defendants have produced no records responsive to the Instant FOIA Requests.

51.     In the more than a year since JRC submitted the Instant FOIA Requests, it has attempted, on at least eleven occasions including, most recently, on December 8, 2023, to engage with Defendants in a good faith effort to avoid further FOIA litigation between the parties by establishing a mutually-agreeable time frame for the production of responsive records, including the possibility of a rolling production schedule, *see* JRC's two most recent communications to Defendants, which are incorporated herein and attached hereto as **Exhibit G** and **Exhibit H**,

similar to the rolling production schedules ordered by the District Court in the First FOIA Action

and agreed-to by the parties in the Second FOIA Action, *see* Min. Order, *JRC, et al. v. FDA, et*

*al.*, No. 1:17-cv-02092-BAH (D.D.C. Feb. 2, 2018); Joint Status Report at 1-2, *JRC, et al. v.*

*FDA*, No. 1:22-cv-03583-BAH (D.D.C. Oct. 16, 2023).

52.    Defendants, however, have repeatedly either failed to respond to JRC's outreach

or refused to negotiate a rolling production schedule for records responsive to the Instant FOIA

Requests. Instead, FDA has informed JRC that the FDA FOIA Request "has been placed in the

FOIA queues at the appropriate FDA offices and will be processed accordingly." Ex. H at 1.

According to Defendants' most recently shared projections, their refusal to agree to a rolling

production schedule means that FDA does not expect to even begin reviewing records potentially

responsive to the FDA FOIA Request for *at least another year* (except to the extent there is

incidental overlap between the records responsive to the FDA FOIA Request and the Second

FOIA Request), and HHS *is unable to even estimate a time frame* to respond to the HHS FOIA

Request. *See* Ex. G at 2; Ex. H at 1. Defendants' prolonged failure to promptly make non-exempt

records responsive to the Instant FOIA Requests available to JRC violates FOIA, and their

steadfast refusal to negotiate a rolling production schedule necessitated the commencement of

this FOIA action.

53.    JRC constructively exhausted its administrative remedies with respect to the

Instant FOIA Requests because Defendants violated FOIA's statutory requirements by failing to

comply with the Act's time limits for issuing their determinations, *see* 5 U.S.C.

§ 552(a)(6)(C)(i), and because Defendants did not issue final determinations on the Instant FOIA

Requests to JRC before it initiated this FOIA action, *see Oglesby v. U.S. Dep't of the Army*, 920

F.2d 57, 63-64, 67 (D.C. Cir. 1990).

54.     Defendants' failures are unlawful under the Act, as well as Defendants' own controlling FOIA regulations and controlling case law.

55.     Pursuant to 5 U.S.C. § 552(a)(3)(A), JRC has a statutory right to the records sought in the Instant FOIA Requests, which Defendants have improperly withheld.

56.     The need for this Court to compel Defendants to make records responsive to the Instant FOIA Requests promptly available to JRC is particularly acute in light of FDA's threat "to issue by December 2023 a proposed rule banning [ESDs] intended to treat self-injurious or aggressive behavior." Reply in Supp. of Defs.' Mot. for Summ. J. & Opp'n to Plfs.' Cross-Mot. for Summ. J. at 19, *JRC, et al. v. FDA, et al.*, No. 1:17-cv-02092-BAH (D.D.C. June 23, 2023). If finalized, the imminent ban would critically jeopardize the health and safety of the most desperately afflicted JRC patients, whose treatment-resistant and life-threatening self-injurious and aggressive behaviors have substantially decreased – and, in some cases, completely ceased – due to JRC's use of the GED devices, and who have experienced no significant side effects caused by the GED devices, despite receiving the treatment for years and, in many cases, since before FDA issued the Proposed Ban.

57.     Defendants' failure to promptly produce records responsive to the Instant FOIA Requests in violation of FOIA has harmed JRC by depriving it of timely access to data and information to which it is legally entitled and which will enable it to safeguard the critical GED treatment it provides to its most desperately afflicted patients by defending against FDA's ongoing efforts to interfere with JRC's practice of medicine through the Agency's planned proposed rule banning ESDs used to treat self-injurious and aggressive behavior. *See Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005) ("'Information is often useful only if it is timely.'") (quoting H.R. Rep. No. 93-876, at 6 (1974) (report on the 1974 FOIA amendments)).

58.   For Defendants' violations of FOIA, including their unlawful withholding of records responsive to the Instant FOIA Requests, JRC is entitled to the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, JRC respectfully requests that this Honorable Court:

1.   Declare that Defendants' withholding of the records requested in the Instant FOIA Requests is unlawful;

2.   Order Defendants to produce immediately, completely, and without redactions or withholdings the records requested in the Instant FOIA Requests pursuant to 5 U.S.C. § 552(a)(4)(B);

3.   Enjoin Defendants from withholding the records requested in the Instant FOIA Requests pursuant to 5 U.S.C. § 552(a)(4)(B);

4.   Declare, based on Defendants' failures to comply with FOIA and their own controlling FOIA regulations, that Defendants have waived or otherwise forfeited, to the maximum extent allowable, any right they may have otherwise had to withhold responsive records;

5.   Award JRC its litigation costs and attorney fees incurred in this FOIA action pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

6.   Grant JRC such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE JUDGE ROTENBERG EDUCATIONAL CENTER, INC.,

By its attorneys,

*/s/ Edward J. Longosz, II*
Edward J. Longosz, II, Esq. (D.C. Bar No. 368932)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, Northwest, 12th Floor
Washington, D.C. 20006
T: 202 659 6619
F: 202 659 6699
elongosz@eckertseamans.com

*/s/ Michael P. Flammia*
Michael P. Flammia, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two International Place, 16th Floor
Boston, MA 02110
T: 617 342 6854
F: 617 342 6899
mflammia@eckertseamans.com
*Of Counsel – Pro Hac Vice To Be Filed*

*/s/ Matthew D. Rodgers*
Matthew D. Rodgers, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two International Place, 16th Floor
Boston, MA 02110
T: 617 342 6817
F: 617 342 6899
mrodgers@eckertseamans.com
*Of Counsel – Pro Hac Vice To Be Filed*

Dated: January 9, 2024

-17-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was electronically filed on January 9, 2024 and will be served on the below parties and their counsel with all appropriate documents along with a Summons:

Chief Counsel, U.S. Food and Drug Administration
Attention: Litigation
White Oak Building 31, Room 4544
10903 New Hampshire Avenue
Silver Spring, MD 20993

General Counsel
U.S. Department of Health and Human Services
200 Independence Avenue, Southwest
Washington, D.C. 20201

Civil Process Clerk
U.S. Attorney's Office for D.C.
601 D Street, Northwest
Washington, D.C. 20530
USADC.ServiceCivil@usdoj.gov

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, Northwest
Washington, D.C. 20530

*/s/ Edward J. Longosz, II*
Edward J. Longosz, II

Dated: January 9, 2024

-18-